OPINION
Defendant-appellant Sir Lawrence Ringler appeals his convictions and sentences entered by the Morrow County Court of Common Pleas on one count of kidnapping, in violation of R.C.2905.01(A)(4); one count of aggravated burglary, in violation of R.C. 2911.11(A)(1); and one count of felonious assault, in violation of R.C. 2903.11(A)(2). Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On October 15, 1998, the Morrow County Grand Jury indicted appellant on the aforementioned charges in addition to one count of attempted rape. At his arraignment on October 21, 1998, appellant entered a plea of not guilty to the indictment. Appellant filed a timely notice of alibi. The matter came on for trial by jury on November 23, 1998. At the close of the State's case-in-chief, the trial court dismissed the attempted rape charge upon appellant's Crim.R. 29 Motion, but denied the motion with respect to the kidnapping and aggravated burglary charges. After hearing all the evidence and deliberations, the jury found appellant guilty of one count of kidnapping, one count of aggravated burglary, and one count of felonious assault. The following evidence was adduced at trial. The victim, Samantha Woods, fifteen years old at the time of the incident, testified on the morning of September 3, 1998, she talked on the telephone with her boyfriend until about 11:30 or 11:40 a.m. After concluding the conversation, she took her dog outside and chained the animal to the dog house. Samantha reentered the house and cleaned her bedroom for a short time. Thereafter, she proceeded to the kitchen to wash the dishes. As she waited for the sink to fill with water, Samantha heard a knock on the door. She answered the door, and found a man, who was later identified as appellant, requesting to use the telephone because his car had broken down. After Samantha twice denied appellant's request, she attempted to shut the door. Appellant pushed the door open, causing the girl to fall down. Samantha picked herself up and began to run away from appellant. Appellant grabbed her by the hair and restrained her. As Samantha struggled to get away from appellant, he instructed her to quit fighting, stand still, and shut up. Samantha stopped struggling after appellant drew a knife. When appellant loosened his grip on her, Samantha was able to break free. Samantha ran from the living room into her bedroom, tripping over a box of books as she fled. Appellant followed Samantha into the bedroom, picked her up, and threw her onto the bed. Appellant sat on top of Samantha, who continued to scream and fight. After instructing the girl to stop struggling, appellant struck her in the face. He proceeded to remove her shirt. Samantha continued to fight and appellant hit her again. With his knife, appellant slashed Samantha's bra strap, exposing her breasts, which he began to touch, squeeze, and pinch. Samantha refused to obey appellant's orders to stop fighting and continued to do so until he cut her leg with the knife. Appellant pulled Samantha's shorts down around her knees. Appellant twice pulled down the girl's underwear, but she was able to pull them back up. After appellant cut Samantha's stomach with his knife, she complied with his order to lay still. Appellant unsuccessfully attempted to remove Samantha's underwear, so he tried to cut them off with his knife. Samantha freed one of her legs and began to kick appellant. Appellant bit Samantha's leg. Eventually, Samantha freed herself from appellant, and ran from her bedroom into her mother's bedroom, where she retrieved a pistol. Appellant pursued Samantha into the bedroom, kicking down the door. Samantha pointed the gun at him and demanded he leave. Appellant complied with her demand, but vowed to be back. The entire encounter lasted approximately three minutes. Between 11:50 and 11:55 a.m., Cora Woods, Samantha's mother, received a call at her place of employment from her daughter, who was hysterical, crying, and screaming. After Ms. Woods repeatedly told Samantha to calm down because she could not understand her daughter, Samantha stated, "he tried to rape me, he tried to rape me, mom, I need you to come home." Ms. Woods asked her daughter a few questions and then called 911. At 11:59 a.m., Morrow County Deputy Robert White was dispatched to the Woods' residence. Deputy White testified the drive, at the legal speed limit, from the courthouse to the Woods' residence takes exactly 17 minutes. Catherine Shonk, appellant's girlfriend, testified on his behalf. On September 3, 1998, appellant drove Shonk to a 10:00 a.m. job interview in Columbus. Appellant waited for Shonk in her vehicle. Shonk testified, after the interview, she and appellant drove to the Morrow County Courthouse because appellant had an appointment with his parole officer. Shonk recalled they arrived in Morrow County between 11:00 and 11:15 a.m. Shonk waited in her vehicle while appellant met with his parole officer. Shonk specifically remembered appellant returned to the vehicle at 11:45 a.m. because she had planned to meet appellant's sister for lunch at 12:15 p.m. Because appellant's sister had overslept, the lunch date never occurred, and Shonk and appellant returned to Buckeye Lake, where they resided, at 1:00 p.m. Shonk testified she and appellant were together the entire day. Jeffrey Dyer, appellant's parole officer, testified he met with appellant on September 3, 1998, at approximately 11:00 a.m. During the time the two men were together, Dyer made telephone calls to a probation department in Labelle, Florida, and to the Interstate Compact Office in Columbus. According to his telephone records, Dyer called Florida at 11:12 a.m. At 11:15 a.m., Dyer made the second call to Columbus. That call lasted approximately two and a half minutes. After he concluded the call to Columbus, Dyer spoke briefly with appellant. Appellant testified on his own behalf. Recalling the morning of September 3, 1998, appellant testified he drove his girlfriend, Catherine Shonk, to a job interview and thereafter the two proceeded to Morrow County where appellant met with his parole officer. Appellant explained he was on parole for a1991 conviction. After serving two and half to three years in prison, appellant was released on parole for a period of five years. Appellant also admitted he was on probation in Florida. Appellant stated he arrived in Dyer's office a couple of minutes after 11:00 a.m. After concluding his conversation with Dyer, appellant spoke with Chad C. Hecker, appellant's misdemeanor probation officer, for approximately fifteen minutes. Appellant testified he was still in the parole department at 11:30 a.m. Hecker could not recall having a conversation with appellant on September 3, 1998. On cross-examination, appellant stated he left the courthouse at approximately 11:45 a.m. Appellant further testified he and Shonk drove to the Columbus area, where they arrived midday, in order to meet his sister. The couple returned to Licking County at approximately 1:30 p.m. Deputy Samuel Keckler of the Morrow County Sheriff's Department testified in the State's case-in-chief. Deputy Keckler testified he began investigating the September 3, 1998 incident the following day. Approximately one week after Samantha's identification of appellant as her attacker, Keckler arrested appellant. Keckler stated he read appellant his Miranda Rights, and commenced questioning him as to his whereabouts on September 3, 1998. Appellant informed the deputy he was working in Pataskala, Ohio, that day. When Deputy Keckler indicated the Sheriff's Department would verify the information with his employer, appellant changed his story, indicating he was at the Licking County Department of Human Services in order to obtain a medical card. During the course of the interview, Deputy Keckler learned appellant was not at the Licking County Department of Human Services during the time period in question. After advising appellant of this newly acquired information, appellant replied he could not remember where he was on September 3, 1998, and asked to speak to an attorney. After hearing the evidence and deliberations, the jury found appellant guilty of kidnapping, aggravated burglary, and felonious assault. The trial court sentenced appellant to a ten year term of incarceration on the kidnapping conviction, a ten year term on the aggravated burglary conviction, and an eight year term on the felonious assault conviction. The trial court ordered the sentences run concurrently with each other. The trial court memorialized the jury's verdict in a Journal Entry dated December 1, 1998, and appellant's sentence in a Journal Entry Sentencing filed December 30, 1998. It is from these convictions and sentences appellant appeals, raising the following assignments of error:
 I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S CRIM. R. 29 MOTION TO ACQUIT WITH RESPECT TO BOTH THE KIDNAPPING CHARGE AND THE AGGRAVATED BURGLARY CHARGE.
 II. THE JURY VERDICTS RENDERED HEREIN ARE NOT SUPPORTED BY EVIDENCE AND/OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 I
In his first assignment of error, appellant maintains the trial court erred in denying his Crim.R. 29 Motion for Acquittal with respect to the kidnapping and the aggravated burglary counts. The indictment charged appellant with kidnapping, in violation of R.C. 2905.01(A)(4), which provides: (A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
* * *
 (4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will;
R.C. 2907.01(C) defines "sexual activity" as "sexual conduct or sexual contact, or both." "Sexual conduct' means vaginal intercourse * * * anal intercourse, fellatio, and cunnilingus * * *." R.C. 2907.01(A). "Sexual contact' means any touching of an erogenous zone of another * * * or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). Specifically, appellant argues the trial court's dismissal of the attempted rape charge negated the "to engage into sexual activity" element necessary to establish the offense of kidnapping. Additionally, appellant submits the dismissal also negated the element of "any criminal offense" element necessary to establish the offense of aggravated burglary. We find appellant's reasoning to be seriously flawed. First, the trial court found appellant's conduct, as established through the testimony presented at trial, supported a finding appellant committed the offense of gross sexual imposition, a lesser included offense of rape. Although an essential element of rape is "sexual conduct", such element is not necessary to establish an offense of gross sexual imposition, which expressly prohibits "sexual contact". Because "sexual activity" includes "sexual contact" and the testimony supports a finding appellant engaged in "sexual contact", the element was established for the kidnapping charge. Furthermore, the fact appellant did or did not accomplish "sexual activity" is irrelevant. The requisite mental state for the offense of kidnapping is purpose. The testimony presented at trial supports a finding appellant purposely restrained Samantha Woods with the purpose to engage in "sexual activity." Accordingly, we find the trial court did not err in denying appellant's Crim.R. 29 Motion with respect to the kidnapping charge. Turning to the second prong of appellant's argument, we also find the trial court did not err in denying appellant's Crim.R. 29 Motion with respect to the aggravated burglary charge. R.C. 2911.11(A)(1) provides: (A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
 (1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
Again, we disagree with appellant's assertion the trial court's dismissal of the attempted rape count negated the "any criminal offense" element necessary for a conviction of aggravated burglary. The requisite mental state for aggravated burglary is also purpose. As stated supra, whether or not appellant engaged in "sexual activity" with Samantha Woods is irrelevant because he entered the Woods' residence with the purpose to commit a criminal offense. Additionally, appellant was convicted of felonious assault, which also satisfies the "any criminal offense" element. Based upon the foregoing, appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant raises a manifest weight of the evidence claim. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997),78 Ohio St.3d 380, 387 citing State v. Martin (1983), 20 Ohio App.3d 172,175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1. The crux of appellant's argument is the testimony adduced at trial supports his alibi and the testimony relative to the time frame of the attack established appellant could not have been at the scene of the crime at the time during which the attack allegedly occurred. We disagree. Although the testimony regarding the timing of the events of September 3, 1998, is somewhat unprecise, the testimony of numerous witnesses provided a basis upon which the jury could reject appellant's alibi. The trier of fact was free to accept or reject all or any part of the testimony of the witnesses and assess the credibility of those witnesses. The jury was presented with sufficient evidence from which it could find appellant had sufficient time in which to leave the Morrow County Courthouse and perpetrate the offense upon Samantha Woods. Upon our review of the entire record and our Statement of Facts as set forth supra, we find the jury clearly did not lose its way so as to result in a manifest miscarriage of justice. We do not disagree with the jury's resolution of the testimony. Appellant's second assignment of error is overruled.
The convictions and sentences of the Morrow County Court of Common Pleas are affirmed.
By: Hoffman, J. Wise, P.J. and Edwards, J. concur